**IT IS FURTHER ORDERED** that Risk Control's motion for a protective order [# 30–1] is denied.

**IT IS FURTHER ORDERED** that Risk Control's motion for production of any statements obtained from former Risk Control managerial employees [# 30–2] is denied.

UNITED STATES of America, Plaintiff,

v.

Diamond L. COLEMAN, Defendant.

No. 93–00011–05–CR–W–9–6.

United States District Court,
W.D. Missouri,
Western Division.

March 27, 1997.

William L. Meiners, Asst. U.S. Atty., Kansas City, MO, for Plaintiff.

John G. Schultz, Kansas City, MO, for Defendant.

### FINDINGS AND REASONS

SACHS, Senior District Judge.

Because of the illness of Chief Judge Bartlett, the sentencing judge in this case, I have been asked, pursuant to Local Rule 35, to handle the defendant's motion for modification downward from a life sentence. The motion is based on an intervening change in the sentencing guidelines pertaining to the counting for sentencing purposes of quantities of illegal drugs, in this instance cocaine base or crack. The Government's initial response dealt only with the drug quantities; however, at the hearing on defendant's motion the Government offered various reasons why there should not be a departure downward from the life sentence. These include: (1) defendant should be held responsible, by a preponderance of evidence, for the homicide of Tony Hinton, a high school student who was shot after a fistfight with a cousin of the defendant, who purportedly called defendant for assistance; (2) use of firearms in connection with drug activities, and using a false identification to obtain firearms; (3) use of younger teenagers in carrying out defendant's major drug activities (while he himself was in high school); (4) the alleged offer by defendant to enter into a "contract killing" arrangement for the homicide of three police officers who were the witnesses to another crime; and (5) obstruction of justice by reason of perjury at defendant's trial before Judge Bartlett, by testimony that a nonexistent person, Susan Higgie, had stored large sums of money for him to send to his father (the leader of the entire drug operation).

Only the perjury point was made by the Government as an objection to the presentence investigation report of January 11, 1994. The probation officer did note the pendency of State charges regarding the

Hinton homicide which were dismissed because a key witness, the passenger in defendant's car, had absconded. Although none of the points was made in filings before the hearing on sentence reduction, the Government contends, and defendant's counsel does not contest, that it made prehearing disclosures to opposing counsel.

## I.

■ The court concludes, and the Government acknowledges, that the life sentence in this case, which was mandated by earlier guidelines, is subject to modification pursuant to 18 U.S.C. § 3582(c)(2) and Guideline 1B1.10. *See United States v. Coohey,* 11 F.3d 97, 101 (8th Cir.1993).

The amended base offense level is 38 and the total offense level is reduced to 41. At Criminal History Category I the Guideline sentence is 324–405 months. The Government contends, however, that the life sentence should not be reduced, because this is "an extraordinary case" in which an upward departure "may be warranted." The Sentencing Commission states that such upward departure "may" be warranted "where the quantity [of drugs] is at least ten times the minimum quantity required for Level 38." Application Note 17 to § 2D1.1.

Although the Sentencing Commission has also sought to amend the guidelines downward for cocaine base or crack, Congress rejected the formula proposed; the current requirement for Level 38 is therefor only 1.5 kilograms of cocaine base. The history is recited in *United States v. Booker,* 70 F.3d 488, 494 n. 22 (7th Cir.1995). Because defendant was held responsible for 42.4 kilograms of crack the Government seeks an upward departure.

■ There are two considerations that cause me to reject this part of the Government's request, although the large amount and other considerations do favor resentencing to the top of the Guidelines even before considering the new contentions. First, defendant was 21 years old at sentencing, which suggests immaturity of judgment as a mitigating factor (age alone would not be); moreover, the leading figure in the drug dealing activities was defendant's father, which suggests likelihood of influence. This consideration is not an excuse or basis for departure downward, or even, in my judgment, for going lower in the Guideline range, but it does strongly suggest to me that exercise of judgment should be made in defendant's favor where an upward departure is sought.

The second factor that influences me is that the same Commission which suggested possible upward departure where the quantity is "at least ten times the minimum quantity required for Level 38" would have made crack *identical* with powdered cocaine, for sentencing purposes, in the proposed amendment that failed. If the amendment had succeeded, the offense level would have been 34 (prior to considering defendant's supervisory role). 15–50 kilograms of powdered cocaine is assigned that offense level.

Out of deference to Congress, I cannot and perhaps would not if I could reconstruct this offense as a Level 34 offense. However, if a five to one or ten to one ratio were used (which has not been rejected by Congress and would surely be much preferred by the Commission to the present factor of 100 to 1), we would have a Level 38 offense rather exactly or (at a 10 to 1 ratio) an amount about double the total needed for Level 38 and thus not within the range where a departure becomes a consideration because of large drug quantities.

I am thus not satisfied that I should consider this case as involving more than 20 times the amount of drugs needed for a Level 38 offense level. The Commission has been directed by Congress to restudy the formula for crack and powdered cocaine. On its present information and evaluation I must conclude the offense would not be considered by the Commission to be egregiously worse, simply as a drug offense, than that specified for Level 38.

## II.

■ Except for the perjury claim, the new contentions of the Government should clearly be rejected for sentencing purposes, particularly when we are dealing with a teenage offender who would, under a favorable modi-

fication, be imprisoned until he is in his mid-fifties. Only the perjury claim was made as an objection to the presentence report, which did not initially mandate a life sentence. Before Judge Bartlett increased the offense level at the sentencing hearing because of defendant's supervisory role in the offense, the range was 360 months to life. Defendant was subject to release as early as age 50. If the Government wanted a life sentence, or something close to that, it had every incentive to make every contention now presented, but did not. The present motivation seems to be to retain the life sentence so that a State Court trial for murder will be rendered unnecessary. These contentions are, however, simply too late—except for the perjury claim—under Local Rule 37 and preexisting practice.

Additional discussion is appropriate, however, in connection with some of the claims.

### A. The Hinton Homicide

■ In less than an hour's presentation at the modification hearing the Government "tried" its homicide case, using as its sole witness the case agent who had a good grasp of the available record.

I do not understand that either defendant's cousin or the purported passenger in defendant's car are currently unavailable. The cousin would likely claim a privilege against self-incrimination. The passenger, however, has purportedly given a statement identifying defendant as the individual in the car who shot the victim. There is also circumstantial evidence tending to connect the weapon used with defendant, but the passenger would be the crucial witness at a murder trial.

Even if I were inclined to disregard defendant's confrontation rights, which I am not, I cannot do so under Eighth Circuit law. *United States v. Zentgraf,* 20 F.3d 906 (8th Cir.1994). At a minimum, the Government would need to establish for me, and I would need to find, compelling inconvenience and lack of feasibility of presenting the accuser. Moreover, I would be required to deal with the issue of reliability of the hearsay. One obvious question, even if a bit unlikely, is whether the passenger was himself the one who shot the victim, perhaps using a firearm owned by defendant. He surely had an incentive to implicate defendant, which bears on the reliability of his accusation. In any event, a State prosecution is still available. Like Judge Oliver, some years before recent changes of law, I would be deeply troubled if I were forced to punish defendant for a homicide for which defendant has not been tried or convicted, not evaluated under the standard of proof available to defendants in criminal proceedings. *See United States v. Duardi,* 384 F.Supp. 874, 881 (W.D.Mo.1974).

For present purposes defendant is entitled to the presumption of innocence and may insist on his confrontation rights.

### B. The Alleged Offer of a "Contract Killing"

For reasons stated, I cannot take the agent's information relating to a proposed "contract killing." One issue at a trial of the charge would be whether defendant made a serious offer, or was boasting or trying to act like an adult capable of arranging for multiple murders. It must be remembered that the youthful defendant had no prior criminal record, for violence or otherwise.

### C. Other Belated Charges

Defendant's alleged use of teenagers some years younger than himself does not seem so unusual as to justify a departure, and the Government did not make such claim when it was timely. Similarly, surreptitious firearms acquisitions have not previously been asserted as issues going beyond guideline sentencing and will not be considered at this time.

### III.

■ Perjury at trial is the issue most entitled to be considered as a basis for a two-point departure upward, which would mandate, according to the guidelines, maintaining the life sentence. However, examination of the pertinent portion of the original sentencing transcript, as supplied by the Government in its Sentencing Memorandum of March 19, 1997, shows that the prosecution abandoned the obstruction of justice issue. Tr. 60. This occurred after all evidence had

been presented on the subject and at a time when there had been no ruling on the role in the offense point, and thus no assurance that a life sentence would necessarily be imposed.

It is not clear why the prosecution abandoned the issue. It may have been so confident that the two-point increase would be imposed on other grounds that it considered it unnecessary to debate a more arguable issue. My reading of the transcript suggests, however, that there was a solid claim of lying to the jury on a material point. Conceivably the motivation was to protect the reputation of defendant's late grandmother, rather than to protect himself. I need not evaluate the point, however, because I believe an abandoned contention cannot be relitigated any more than could a claim not initially made to the Probation Office and the sentencing judge.[1]

██ The Government argues that the entire sentence has been "unbundled" by defendant's motion, and he cannot restrict consideration to the single adjustment favorable to him on resentencing. The cited case, *United States v. Shue*, 825 F.2d 1111 (7th Cir.1987), allows a district judge, on resentencing to correct an error (or changed circumstances) to unbundle the package in order to carry out the original sentencing intent. In this case, however, the Government wishes to change its tactics long after sentencing. That should not be allowed, any more than a defendant, being resentenced under the *Bailey* firearm use decision, should be allowed, for example, to relitigate or present new evidence on an unrelated issue, such as the quantity of drugs for which he is to be held responsible. In a recent case, for example, I declined to reexamine a surprisingly large and unrealistic fine imposed by a colleague, on a *Bailey* resentencing. It is our practice to make adjustments for firearm involvement when a five year mandatory sentence is vacated. Neither I nor any district judge to my knowledge has adopted a practice of totally reconsidering the sentence, apart from the firearm aspects.

I therefore reject the obstruction of justice enhancement claim.

### IV.

It may be appropriate to acknowledge some discomfort in these rulings, all favorable to defendant. My problem is not one of feeling that a 405 month sentence would be excessively lenient, even though the youthful offender has an unusually unappealing case. Surely he will be a very different person at 55, after 35 years in prison, than he was at 20. I cannot predict improvement in character, or that he will come out as a law-abiding member of society. Where I am most troubled is that many defendants whose conduct has been a good deal better than his are serving even longer sentences. Defendant has at this point been "lucky" in getting a reduction which could realistically amount to 20 years.

In the interests of uniformity, if I were free to do so, I would probably direct that defendant be confined until he is 60 years old. But under the current sentencing system I must apparently choose between letting him out at 55 or confining him for life. Given that choice I find it easier to live with these rulings, while continuing to recognize that there is prosecutorial discretion to try defendant on the murder charge.

The Guideline range on resentencing will be 324–405 months.

SO ORDERED.

---

1. While judicial "comfort" is not controlling, I acknowledge it would shock the conscience to extend defendant's imprisonment by perhaps 20 years as punishment for perjury.